(56 Misc. Rep. 477.)

### BLUMBERG v. STERLING BRONZE CO.

(Supreme Court, Appellate Term. November 29, 1907.)

1. BROKERS—ACTIONS FOR COMMISSIONS — INSTRUCTIONS — STARTING NEGOTIATIONS.

In an action for commissions for securing a certain order for lighting fixtures, where plaintiff claimed that a revocation of the agreement was made in bad faith by defendant to avoid paying the commission, and subsequent to the revocation the contracts were secured by defendant, an

instruction that if the contracts were the result of negotiations started by plaintiff he should recover was erroneous, since it was necessary that he should have been the procuring cause of the sale, and merely starting the negotiations was not enough.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, § 69.]

**2. TRIAL—ERRORS CURED—INSTRUCTIONS.**

The error in the charge was not cured by a subsequent charge that in order to recover plaintiff must prove by a preponderance of the evidence that it was through his efforts and influence that defendant obtained the order, since at most the latter instruction created a confusion, which permitted the jury to apply conflicting principles of law at their discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 705–718.]

**3. SAME—PORTION OF INSTRUCTION REQUESTED.**

The fact that an objectionable instruction is but part of the main request to charge is unavailing, where the objectionable portion is unrelated to the remainder and is clearly stated in the disjunctive as a separate and distinct principle.

Appeal from City Court of New York, Trial Term.

Action by Alexander J. Blumberg against the Sterling Bronze Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Simpson, Werner & Cardozo, for appellant.

Wales F. Severance, for respondent.

LEVENTRITT, J. In March, 1905, the defendant employed the plaintiff as its agent to effect the sale of certain lighting fixtures for use in the new store of B. Altman & Co., then in process of construction. The contract of employment is represented by two letters, which passed between the parties and which read as follows:

"March 28, 1905.

"Mr. A. J. Blumberg, No. 91 Wall Street, New York City—Dear Sir: If through your efforts and influence we obtain the order for the lighting fixtures required for the new store of B. Altman & Co., we will agree to pay you a commission of seven and one-half (7½%) per cent. on the net amount of the contract, providing same is secured on our standard prices. If it should be necessary for us to reduce these prices in order to secure the work, it is understood that the amount of your commission will be proportionately reduced. Said commission to be paid to you pro rata as payments for fixtures are received from B. Altman & Co.

"Yours truly,                              Sterling Bronze Company.
"To A. J. Blumberg.   (B. W.)"

"New York, March 28, 1905.

"Sterling Bronze Company, Nos. 107–113 West 25th Street, City—Gentlemen: Your agreement of March 28th regarding the contract for the lighting fixtures for the new store of Messrs. B. Altman & Co., is hereby accepted. All prior agreements are void.    Yours truly,
"(A. J. B.)                              A. J. Blumberg."

In January, 1906, the agreement was canceled by the defendant in writing as follows:

"January 24, 1906.

"Mr. A. J. Blumberg, 91 Wall Street, New York—My Dear Mr. Blumberg: We have dropped the Altman fixtures proposition entirely. Mr. Grey, who

was attending to this matter for us, is no longer in our employ. Therefore we are doing nothing further regarding the fixtures, and thought it best to advise you, as the agreement we had with you is now canceled. Hoping to see you some time in the near future, I am yours very truly,

"Sterling Bronze Company,

"F. W. T.   F. W. Tolley."

Thereafter negotiations were resumed between the defendant and B. Altman & Co., which resulted in the defendant being awarded the contracts. Upon a refusal of his demand for commissions the plaintiff brought this action. The plaintiff alleged performance of the contract of employment, and tried his case upon the theory that the revocation of the agreement by the defendant was in bad faith and with the intent to deprive him of his commissions and thereby reap the benefit of his labor at a time when that labor was about to prove effectual.

Irrespective of the uncertainty of the plaintiff's proof of performance, we deem it necessary on this appeal to refer only to an exception which brings up the propriety of a request charged by the learned trial justice. The case was submitted to the jury upon the theory of performance outlined in the complaint, and the jury were left to determine whether the plaintiff was the procuring cause of the sale to Altman & Co. At the conclusion of a charge to which no criticism could be made the court at the request of the plaintiff charged as follows:

"If the jury believe that the contracts between the defendant and B. Altman & Co. were the result of negotiations started by this plaintiff, the plaintiff is entitled to a verdict."

This we think was erroneous. It matters not that the plaintiff may have started negotiations which resulted in a sale, if he was not the procuring cause of the sale. Donovan v. Weed, 182 N. Y. 43, 74 N. E. 563. In that case a request to charge similar to the one here under consideration was declared to be erroneous, and the principle there enunciated was founded on the decision in Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441, where the court, by Finch, J., say:

"If the broker has already planted the seed, which afterwards grows, and they take the fruits of it, he is entitled to a commission, not because they could not revoke the authority, but because the question is whether what he has already done, whether the crop he has already sown, comes up and ripens. * * * And in such events it matters not that after his (the broker's) failure, and the termination of his agency, what he has done proves of use to the principal. In a multitude of cases that must necessarily result. He may have introduced to each other parties who otherwise would have never met. He may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale. He may have planted the very seeds from which others reap the harvest. But all that gives him no claim."

The vice in this portion of the charge was not cured by a subsequent charge at the defendant's request that:

"In order to recover in this action the plaintiff must prove by a preponderance of evidence that it was through his efforts and influence that the defendant obtained the order for the lighting fixtures required for the new store of B. Altman & Co."

At most the latter created a confusion, which permitted the jury to apply conflicting principles of law at their discretion. The fact that the portion of the charge referred to is but a part of the main request to charge is unavailing, since the objectionable paragraph is unrelated to the remainder of the request, and is clearly stated in the disjunctive as a separate and distinct principle. It follows that the error committed by the learned justice calls for a new trial.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.